**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE BAXTER, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PDD HOLDINGS INC. F/K/A PINDUODUO INC., LEI CHEN, JING MA, and JUN LIU, <br><br> Defendants. | **CASE No.: 1:24-cv-05653-PKC-CLP** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JARED SHAW TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** <br><br> **CLASS ACTION** |
| MACOMB COUNTY RETIREE HEALTH CARE FUND, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PDD HOLDINGS INC. F/K/A PINDUODUO INC., LEI CHEN, JIAZHEN ZHAO, JING MA, and JUN LIU, <br><br> Defendants. | **CASE No.: 1:24-cv-06881-PKC-CLP** <br><br> **CLASS ACTION** |

[Additional caption on page below]

1

| JARED SHAW, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PDD HOLDINGS INC. F/K/A PINDUODUO INC., LEI CHEN, JING MA, and JUN LIU,<br><br>Defendants. | CASE No.: 1:24-cv-06950-JAM<br><br>**<u>CLASS ACTION</u>** |

Movant Jared Shaw ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     consolidating the above-captioned actions;

(b)     appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of securities of PDD Holdings Inc. f/k/a Pinduoduo Inc. ("PDD," "PDD Holdings," or the "Company") between April 30, 2021 and September 12, 2024, inclusive (the "Class Period") [1], including those who purchased PDD call options or sold put options during the Class Period; and

(c)     approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

---

[1] The first-filed action, *Baxter v. PDD Holdings Inc., et al.,* case no. 1:24-cv-05653-PKC-CLP has a class period of April 30, 2021 and June 25, 2024. The second-filed action, *Macomb County Retiree Health Care Fund v. PDD Holdings Inc.., et al*., case no. 1:24-cv-06881-PKC-CLP, has a Class Period of April 30, 2021 and August 23, 2024. The third-filed action, *Shaw v. PDD Holdings Inc. et al*, 1:24-cv-06950, has a Class Period of April 30, 2021 and September 12, 2024. A more inclusive class period is favored at the lead plaintiff stage. *See, e.g., In re Gentiva Sec. Litig*., 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage); *Deering v. Galena Biopharma, Inc.,* 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage).

**INTRODUCTION AND BACKGROUND**

PDD is a "multinational commerce group that owns and operates a portfolio of businesses." Pertinent to all three related actions, the Company owns the Pinduoduo and Temu platforms. PDD is incorporated in the Cayman Islands, and its business headquarters are located in Dublin, Ireland. PDD operates through operating entities around the world. PDD's American Depositary Shares ("ADS" or "ADSs") trade on the NASDAQ under the ticker symbol "PDD."

Rosen Law filed the first-filed substantially similar action, *Baxter v. PDD Holdings Inc. et al.*, case no. 1:24-cv-05653 (E.D.N.Y.), on August 13, 2024 against the Company and certain of its current and former officers and directors for violations under the Exchange Act. That same day, Rosen Law issued an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

The *Baxter* action alleged that Defendants made false and/or misleading statements and/or failed to disclose that (1) PDD's applications contained malware, which was designed to obtain user data without the user's consent, including reading private text messages; (2) PDD has no meaningful system to prevent goods made by forced labor from being sold on its platform, and has openly sold banned products on its Temu platform; (3) the foregoing subjected PDD to a heightened risk of legal and political scrutiny; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

The second substantially similar action, *Macomb County Retiree Health Care Fund v. PDD Holdings Inc.* et al, 1:24-cv-06881 (E.D.N.Y.), was filed on September 30, 2024 and expanded the end of the Class Period to August 23, 2024. The *Macomb* action includes allegations about malware and failure to implement effective compliance system (leading to

goods made from forced labor being sold on the Company's Temu platform), and adds additional allegations regarding PDD's representations about its merchant policies and relationships with merchants. The *Macomb County* complaint alleges that PDD faced an "undisclosed risk of poor merchant and customer relations as the platforms scaled[.]"

On October 1, 2024, Rosen Law filed a third substantially similar action, *Shaw v. PDD Holdings Inc. et al.*, case no. 1:24-cv-06950 (E.D.N.Y.), alleging substantially similar claims as the *Baxter* action, and expanding the Class Period to September 12, 2024. The *Shaw* action expands the class definition to explicitly include those who purchased call options or sold put options during the Class Period, and to add a subsequent disclosure to the ones alleged in the *Baxter* action.

The complaints outline a series of disclosures relating to malware, the use of forced labor to produce goods sold on the Temu platform, and relating to the Company's relations with vendors.

Regarding malware, on March 21, 2023, *Reuters* published an article entitled "Google suspends China's Pinduoduo app on security concerns," which discussed how Google suspended the Pinduoduo app due to security concerns. On this news, the price of PDD's ADSs declined by 4.24% on March 22, 2023. Then, on March 27, 2023, Bloomberg published an article entitled "Pinduoduo App Malware detailed by Cybersecurity Researchers," which discussed the specific issues that security researchers had found about the Pinduoduo app. On this news, the price of PDD ADSs declined by 3.08% on March 27, 2023. Then, on April 2, 2023, CNN published an article entitled "'I've never seen anything like this:' One of China's most popular apps has the ability to spy on its users, say experts." The CNN article discussed the malware's capabilities, including reading private text messages. On this news, the price of PDD ADSs declined by 1.4% on April 3, 2023 and 2.19% on April 4, 2023.

Then, on June 25, 2024, the attorney general of Arkansas announced a lawsuit against Temu for violations of the Arkansas Deceptive Trade Practices Act and the Arkansas Personal Information Protection Act. On this news, PDD ADSs fell by 1.26% on June 26, 2024 and 4.55% on June 27, 2024.

Regarding the use of forced labor to create products sold on Temu, the *Baxter* complaint alleges that, on June 22, 2023, it was reported by *The New York Times* that a U.S. House of Representatives select committee had identified what were likely "significant violations of U.S. Law by Temu, [. . .] accusing [Temu] of providing an unchecked channel that allows goods with forced labor to flow into the United States." On this news, PDD ADSs fell by 4.24% on June 23, 2023. Then, on February 12, 2024, Fox Business published an article entitled "Temu's Super Bowl ads spark backlash over China-based firm's forced labor allegations," which discussed a growing backlash to PDD among American lawmakers. On this news, PDD ADSs fell by 1.92% on February 13, 2024.

On February 23, 2024, during market hours, *The Information* published an article entitled "U.S. Lawmakers Demand Temu Shipment Ban Over Forced Labor Concerns," which discussed how American lawmakers were pushing for a ban on imports of goods sold on Temu. On this news, PDD's ADSs fell by 4.06% to close at $129.04 on February 23, 2024.

Then, on September 13, 2024, the Biden Administration issued an announcement under the heading "FACT SHEET: Biden-Harris Administration Announces New Actions to Protect American Consumers, Workers, and Businesses by Cracking Down on De Minimis Shipments with Unsafe, Unfairly Traded Products." In this announcement, the Biden Administration announced that it would pursue certain rulemaking activity to curb abuses of certain rules on importing goods into the United States, and also reiterated its commitment to prioritizing

enforcement efforts against illicit imports, as well as the expansion of the Uyghur Forced Labor Prevention Act (UFLPA) Entity List.

On the same day, *The Wall Street Journal* published an article entitled "Biden Takes Aim at China's Temu and Shein With Trade Crackdown," which discussed the measures. On this news, PDD's ADSs fell by 2.4% on September 13, 2024.

Finally, regarding PDD's relationships with those who sell goods on the Company's platforms, on July 30, 2024, it was reported that hundreds of merchants had begun protesting at PDD's office in southern China. According to *Bloomberg*, the "protest was the culmination of growing frustration among merchants and third-party sellers, who feel PDD is increasingly squeezing them for revenue . . . Their complaints center on PDD's practice of withholding payments to merchants who're judged to have fallen short on customer expectations." On this news, PDD ADSs fell 3.47% on July 30, 2024.

Then, on August 26, 2024, PDD disclosed its quarterly results for the second quarter of 2024, in which it missed analyst's revenue growth expectations. In a press release issues the same day, Defendant Chen stated that the Company saw "many challenges ahead," and PDD further announced that it would not be issuing dividends or repurchasing shares for the "foreseeable years ahead," and that it expected future profitability to be weighed down by a reduction in transaction fees for high quality merchants.

On this news, the price of PDD ADSs fell 29% on August 26, 2024.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

6

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

The above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### II.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $87,378.00 in connection with his transactions in PDD securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in PDD securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

**1. Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained financial losses from his investments in PDD securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Movant works as a physician assistant and has a Master of Science in Physician Assistant Studies. Movant has seven years of investing experience and lives in Gilbert, Arizona.

## III.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa);

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and the Class' claims including commencing the first and third-filed actions, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an

extensive history of bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving the Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: October 15, 2024                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim