UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BLAKE BAXTER, *Individually and on Behalf
of All Others Similarly Situated*,

                    Plaintiff,

       -against-                         **MEMORANDUM AND ORDER**
                                                        24 CV 5653 (PKC) (CLP)
PDD HOLDINGS INC. F/K/A PINDUODUO
INC., LEI CHEN, JING MA, and JUN LIU,

                    Defendants.
----------------------------------------------------------X
MACOMB COUNTY RETIREE HEALTH
CARE FUND, *Individually and on Behalf
of All Others Similarly Situated*,

                    Plaintiff,

       -against-                         24 CV 6881 (PKC) (CLP)

PDD HOLDINGS INC. F/K/A PINDUODUO
INC., LEI CHEN, JIAZHEN ZHAO, JING MA,
and JUN LIU,

                    Defendants.
----------------------------------------------------------X
JARED SHAW, *Individually and on Behalf of
All Others Similarly Situated*,

                    Plaintiff,

       -against-                         24 CV 6950 (PKC) (CLP)

PDD HOLDINGS INC. F/K/A PINDUODUO
INC., LEI CHEN, JING MA,
and JUN LIU,

                    Defendants.
----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On August 13, 2024, plaintiff Blake Baxter ("Baxter" or "plaintiff") commenced this action individually and on behalf of all others similarly situated against defendants PDD Holdings Inc., f/k/a Pinduoduo Inc. ("PDD" or the "Company"), Lei Chen ("Chen"), Jing Ma ("Ma"), and Jun Liu ("Liu"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78(j)(b) and 78(t)(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (the "Baxter Action"). (ECF No. 1[1]). On September 30, 2024, Macomb County Retiree Health Care Fund (the "Macomb Fund"), individually and on behalf of all others similarly situated, filed a separate action against PDD, Chen, Ma, Liu and Jiazhen Zhao ("Zhao") (collectively, "defendants"), also alleging violations of Sections 10(b) and 20(b) of the Exchange Act and Rule 10b-5 (the "Macomb Fund Action"). (ECF No. 1, 24 CV 6881). On October 1, 2024, Jared Shaw, individually and on behalf of all others similarly situated, also filed a similar action, alleging similar violations (the "Shaw Action").[2] (ECF No. 1, 24 CV 6950).

Currently pending before this Court is a motion to appoint Lead Plaintiff and approval of Lead Counsel. For the reasons set forth below, the Court appoints Boston Retirement System ("Boston") as Lead Plaintiff, pursuant to the PSLRA, and approves Boston's selection of Labaton Keller Sucharow LLP ("Labaton") as Lead Counsel.

---

[1] Unless otherwise indicated, references to Docket Nos. (ECF) refer to filings in the Baxter Action, 24 CV 5653.

[2] While the Baxter and Macomb Fund Actions were assigned to the Honorable Pamela K. Chen, the Shaw Action was originally assigned to Magistrate Judge Joseph Marutollo. On October 23, 2024, the Shaw Action was transferred to Judge Chen for all purposes. (Order, dated 10/23/24).

BACKGROUND

I. <u>Factual Background</u>

PDD operates two online marketplaces – Pinduoduo and Temu, which allow Chinese merchants to sell goods to consumers around the world. (Boston Mem.[3] at 3; Compl.[4] ¶¶ 8-10). The Company's American Depository Shares ("ADS") trade on the NASDAQ Stock Market under the symbol "PDD." (Boston Mem. at 3; Compl. ¶ 12). The three related actions are brought on behalf of a class of all persons and entities who purchased or acquired PDD securities between April 30, 2021 and September 12, 2024, inclusive, based on allegations that PDD and certain of its executive officers and directors violated Sections 10(b) and 20(a) of the Exchange Act by misleading investors about the sustainability of the Company's revenue growth, failing to implement effective compliance systems to prevent goods made by forced labor from being sold on its platform, and failing to disclose risks of poor merchant and customer relationships which ultimately led to the return of fees to merchants, merchants defecting to other sites, and decreased growth in the Company's customer base. (Boston Mem. at 3).

The Complaint alleges that the Company's 2020 Annual Report contained materially false and misleading statements regarding the Company's risk disclosure about its brand and reputation (Compl. ¶¶ 22, 23), about its improper use of data (<u>id.</u> ¶¶ 24, 25), its failure to protect confidential information (<u>id.</u> ¶¶ 26, 27), and about scrutiny of the Company (<u>id.</u> ¶¶ 28, 29). The Complaint further alleges that the 2021, 2022, and 2023 Annual Reports contained similar false statements and misrepresentations. (<u>Id.</u> ¶¶ 31-38, 42-47, 57-64; <u>see also</u> ¶¶ 39-40, 48-49, 65-66

---

[3] Citations to "Boston Mem." refer to the Memorandum of Law in Support of Boston Retirement System's Motion For Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, filed October 15, 2024 (ECF No. 12-1).
[4] Citations to "Compl." refer to plaintiff Blake Baxter's Complaint filed on August 13, 2024, in 24 CV 5653 (ECF No. 1).

(false statements regarding international trade policies); ¶¶ 50-51, 67-68 (false statements relating to legal compliance risk factors)).

According to plaintiffs, in March 2023, there were a series of disclosures in various news outlets that led to the drop in price of PDD ADSs. (Boston Mem. at 3). Specifically, there were reports that PDD platforms could bypass users' cell phone security to monitor the users' activities in other apps, change settings, and read private messages. (Id.) There was also an article in *Bloomberg* revealing that security researchers had identified potential malware on versions of Pinduoduo, and Google suspended it from its Android app store. (Id.; see also Compl. ¶¶ 73-75). In April 2023, CNN published an article detailing the malware used by the Pinduoduo app to monitor users' activities on other apps, causing the ADS price to decline further. (Boston Mem. at 4; Compl. ¶¶ 76-81).

The stock price declined further after the *New York Times* published an article on June 22, 2023, reporting on Congressional findings relating to Temu and the flow of goods from China to the United States made with forced labor (Compl. ¶¶ 88-94), and then again after a February 12, 2024 Fox Business report on increased attention from American lawmakers on both Temu and Pinduoduo related to allegations of their products being produced by forced labor. (Boston Mem. at 4; Compl. ¶ 107). An additional article published by *The Information* on February 23, 2024 reporting on lawmakers' demands for a ban on goods sold by Temu (Compl. ¶ 109), and a June 25, 2024 press release from the Attorney General of Arkansas suing Temu for violations of the Arkansas Deceptive Trade Practices Act and the Arkansas Personal Information Protection Act, caused further declines. (Boston Mem. at 4; Compl. ¶¶ 82-87, 109).

On July 30, 2024, hundreds of merchants began protesting at the Pinduoduo office in southern China, demanding PDD refund penalties that they claimed were arbitrarily imposed, and then in August 2024, PDD disclosed its quarterly results for the second quarter of 2024,

4

announcing that it had decided not to issue dividends or repurchase shares for the "foreseeable years ahead." (Boston Mem. at 4-5). In that same announcement, PDD stated that it expected its future profitability would be weighed down by reduced transaction fees for high quality merchants. (Id. at 5). Both of these events caused further drops in the price of PDD ADS. (Id.) The price fell again after the Biden Administration's announcement on September 13, 2024 that it was cracking down on de minimis shipments with unsafe or unfairly traded products, targeting Chinese e-commerce platforms specifically. (Id.)

II. Procedural Background

Following the commencement of the Baxter Action on August 13, 2024, Boston Retirement System ("Boston") filed a motion on October 15, 2024, seeking an Order consolidating the three actions, appointing Boston as Lead Plaintiff, and approving Boston's selection of Labaton Keller Sucharow LLP ("Labaton") as Lead Counsel for the Class. (Boston Mem. at 1). On that same date, Lindsay Byron Smith ("Smith") also filed a motion for consolidation, appointment as Lead Plaintiff, and approval of Glancy Prongay & Murray LLP as Lead Counsel. (Smith Mem.[5] at 1). Hu Fan ("Fan") also moved for consolidation, appointment as Lead Plaintiff, and approval of his chosen counsel, Pomerantz LLP ("Pomerantz") (Fan Mem.[6] at 1), as did Jared Shaw, also seeking consolidation, appointment as Lead Plaintiff, and approval of the Rosen Law Firm as Lead Counsel. (Shaw Mem.[7] at 2).

---

[5] Citations to "Smith Mem." refer to the Memorandum of Law in Support of Lindsay Byron Smith's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel, filed October 15, 2024 (ECF No. 17).
[6] Citations to "Fan Mem." refer to the Memorandum of Law in Support of Motion of Hu Fan for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel, filed October 15, 2024 (ECF No. 19-2).
[7] Citations to "Shaw Mem." refer to the Memorandum of Law in Support of Motion of Jared Shaw for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel, filed October 15, 2024 (ECF No. 21).

On October 24, 2024, this Court directed that responses be filed to the four motions for appointment of Lead Plaintiff by November 11, 2024, with replies due November 18, 2024. Thereafter, on October 28, 2024, the Honorable Pamela K. Chen entered an Order consolidating the Baxter Action, the Macomb Fund Action, and the Shaw Action.

On October 29, 2024, Hu Fan filed a Notice of Non-opposition to Competing Motions for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel, indicating that it appeared from the competing motions that Fan did not have the "'largest financial interest' in the litigation" within the meaning of the PSLRA. (ECF No. 22 at 2). On November 8, 2024, Smith withdrew his motion for appointment as Lead Plaintiff, indicating that he did not appear to have the largest financial interest in the relief sought by the Class. (ECF No. 23 at 1). On October 11, 2024, Shaw also filed a Notice of Non-Opposition, noting that it appeared from the motion papers that Boston has the "largest financial interest in the relief sought by the class." (ECF No. 24 at 2).

On November 11, 2024, Boston filed a Memorandum of Law In Further Support of Its Unopposed Motion for Appointment As Lead Plaintiff, and Approval of Selection of Lead Counsel. (Boston Unopp. Mem.[8]).

Accordingly, at this time, the Court having considered Boston's motion, and the other applicants having either withdrawn or indicated their non-opposition to Boston's appointment, the Court grants Boston's motion for the reasons set forth below.[9]

---

[8] Citations to "Boston Unopp. Mem." refer to Boston Retirement System's Memorandum of Law in Further Support of Its Unopposed Motion For Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, filed November 11, 2024 (ECF No. 25).

[9] Given that the District Court has already ordered that the three related actions be consolidated, this Court addresses only the motion for appointment of Lead Plaintiff and approval of Lead Counsel.

6

## DISCUSSION

I. <u>Legal Standard</u>

"'Congress enacted the PSLRA in order to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" <u>Vladimir v. Bioenvision, Inc.</u>, No. 07 CV 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) (internal quotations omitted) (quoting <u>In re Bausch & Lomb Inc. Sec. Litig.</u>, 244 F.R.D. 169, 171 (W.D.N.Y. 2007), <u>opinion modified on denial of reconsideration</u>, No. 06 CV 6294, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007)). Consequently, the PSLRA amended the Exchange Act by setting forth new procedures that govern securities class actions. <u>Weltz v. Lee</u>, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).

As a first step, the PSLRA provides that, within 20 days of the filing of the complaint, the plaintiff must issue a notice "in a widely circulated national business-oriented publication or wire service" that advises members of the proposed class "of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also inform members of the class that they can file a motion to serve as lead plaintiff no later than 60 days after the date on which the notice is published. <u>Id.</u>

The PSLRA also governs the appointment of lead plaintiff and lead counsel. It provides that "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') . . . " 15 U.S.C. § 78u-4(a)(3)(B)(i); <u>see also</u> <u>Schulman v. Lumenis, Ltd.</u>, No. 02 CV 1989, 2003 WL 21415287, at *3 (S.D.N.Y. June 18, 2003).

In determining Lead Counsel, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the individual who: "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Foley v. Transocean Ltd., 272 F.R.D. 126, 127 (S.D.N.Y. 2011). This presumption may be rebutted only if a member of the class presents evidence that this plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The only Rule 23 requirements that must be met in PSLRA cases are typicality and adequacy. Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014). In a motion such as this, the plaintiff "need only make a 'preliminary showing'" that the adequacy and typicality requirements have been met. Schulman v. Lumenis, Ltd., 2003 WL 21415287, at *5 (quoting In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998), opinion adhered to on reconsideration sub nom, In re Olsten Corp., 181 F.R.D. 218 (E.D.N.Y. 1998)); see also id. (noting that "[a]ny preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification").

Finally, with respect to the selection of the lead counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

II. Analysis

Boston argues that as the "unopposed, presumptive Lead Plaintiff," it is "the paradigmatic Lead Plaintiff envisioned by Congress: an experienced institution with a dedicated staff,

8

competent and qualified to select and supervise Lead Counsel, control the litigation, and reduce agency costs." (Boston Unopp. Mem. at 1). Boston argues that it is the most "adequate plaintiff" because it complied with all of the PSLRA requirements, satisfies the requirements of typicality and adequacy under Rule 23, and has the largest financial interests in the litigation. (Id. at 3). Specifically, Boston claims that it incurred losses "significantly greater than the losses claimed by any other movant," "purchased more securities on a net basis," and "expended greater net funds than any other Lead Plaintiff movant," resulting in Boston possessing the largest financial interest in the litigation. (Id. at 1).

### A. Timing Requirements of the PSLRA

In this case, the Baxter Action was filed on August 13, 2024. On that same day, Boston caused notice to be published on *Business Wire*, a widely-circulated, national business-oriented news wire service, indicating that October 15, 2024 was the deadline for applications for lead plaintiff. (McConville Decl.,[10] Ex C). Courts have found *Business Wire* to be a suitable publication for notice. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 403 (S.D.N.Y. 2004). Plaintiffs in the Macomb Fund and Shaw Actions also published notices reiterating that deadline. (Id., Exs. D, E). Thus, the notice requirement of the PSLRA has been satisfied.

Moreover, within sixty days "after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In this case, Boston filed its motion for appointment as Lead Plaintiff on October 15, 2024. Boston's motion is timely.

---

[10] Citations to "McConville Decl." refer to the Declaration of Francis P. McConville in Support of Boston Retirement System's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, filed on October 15, 2024 (ECF No. 12-2), and related exhibits. Mr. McConville is counsel for Boston and partner at Labaton Keller Sucharow LLP. (Id.)

9

B.  Financial Interest

As stated above, the movant Boston must demonstrate that it has the largest financial interest in order to be presumed the most adequate plaintiff. Although the PSLRA does not define the term "largest financial interest," courts in this Circuit consider the following factors:

> (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (*i.e.*, the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (*i.e.*, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period.

See, e.g., Vladimir v. Bioenvision, Inc., No. 07 CV 6416, 2007 WL 4526532, at *4 (S.D.N.Y. Dec. 21, 2007). Courts have found that the fourth factor – amount of loss – is the most important factor. See id. at *5.

In this case, Boston provided its Loss Chart, which indicates that it lost $143,263 on its transactions in PDD securities on a LIFO basis during the Class Period. (Boston Unopp. Mem. at 4; McConville Decl., Ex. B). Boston notes that of the other movants seeking appointment as Lead Plaintiff, Hu Fan has the next highest claimed losses of $127,737, which is significantly less than the losses allegedly suffered by Boston. (Boston Unopp. Mem. at 4). Therefore, because Boston also purchased more PDD securities in total and on a net basis, and expended greater net funds than any of the other movants, the Court finds that there is no dispute that Boston has the largest financial interest in the relief sought by the Class and thus, has satisfied this requirement. (Id. at 4); see Richman v. Goldman Sachs Grp., Inc., 274 F.R.D. 473, 476 (S.D.N.Y. 2011).

C.  Typicality

In addition, Boston satisfies Rule 23's requirements of typicality and adequacy. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc). A plaintiff's claims are typical of those of the proposed class

when they arise "'from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d at 400 (quoting Canson v. WebMD Health Corp., No. 11 CV 5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011)).

Here, Boston's claims arise from the same course of events from which the claims of the other Class members arise, in that Boston: "(1) purchased PDD securities during the Class period; (2) in reliance on Defendants' false and misleading statements; and (3) suffered harm when defendants' alleged misconduct was revealed." (Boston Mem. at 9). Typicality is generally satisfied when the claims of the proposed lead plaintiff are based on the same legal theories that defendants violated the federal securities laws, and which arise from the same event or course of conduct that underlies the claims of the class members. See Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d at 400. Here, Boston has satisfied the typicality requirement.

D. Adequacy

The adequacy requirement of Rule 23 is satisfied when "'(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy.'" In re Sequans Commc'ns S.A. Sec. Litig., 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018) (quoting In re Symbol Techs., Inc. Sec. Litig., No. 05 CV 3923, 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006)).

Here, Boston has a significant interest in the outcome of the litigation, given the financial loss it suffered. (Boston Mem. at 10; McConville Decl., Ex. B). In support of its motion, Boston asserts that its financial interest will ensure "that it will provide vigorous advocacy in representing the Class. (Boston Mem. at 10 (citing McConville Decl., Ex B; Lipetz v. Wachovia

Corp., No. 08 CV 6171, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008))). Boston contends that it has further demonstrated its adequacy by retaining competent and experienced counsel, and has the resources and expertise to prosecute the claims. (Id. at 9-10). Indeed, Boston asserts that it entered into a competitive retainer agreement with its chosen counsel in order to protect the interests of the Class. (Boston Unopp. Mem. at 6 (citing In re Cendant Corp. Litig., 264 F.3d 201, 265-66 (3d Cir. 2001) (holding that "one of the best ways for a court to ensure that [the proposed lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to . . . negotiate a reasonable retainer agreement with . . . counsel")).

Finally, Boston argues that in addition to satisfying the requirements of Rule 23, Boston, "a sophisticated institutional investor," that has managed "approximately $7 billion in assets," is "precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation." (Boston Mem. at 10-11 (citing H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733)). Citing various cases, Boston contends that there is "a clear preference for institutional investors to be appointed as lead plaintiff," and one of the goals of the PSLRA is to encourage institutional investors to serve as lead counsel in a consolidated action. (Id. (citations omitted)). Indeed, "courts have frequently appointed Boston over individual lead movants, even in cases where an individual claims a larger loss." (Boston Unopp. Mem. at 7 (citing Lemm v. New York Community Bancorp, Inc., No. 24 CV 903, 2024 WL 2022213, at *7 (E.D.N.Y. May 7, 2024))).

With respect to Boston's choice of Labaton to act as Lead Counsel, Labaton has demonstrated that it has the resources and expertise to efficiently prosecute the action and indeed, has "excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors." (Boston Mem. at 12 (citing examples)). Based on the legal experience of

the attorneys, particularly their extensive experience in similar cases, the Court concludes that the adequacy requirement has been met.

E. The Presumption Has Not Been Rebutted

In this case, Boston submitted a declaration in which it represents that it is willing to serve as a representative in this matter, and agrees not to accept any payment for serving as a representative, beyond its pro rata share of any recovery. (See Certification[11] ¶ 6). Moreover, the other parties seeking appointment as Lead Plaintiff have either withdrawn or indicated they have no opposition to the appointment of Boston. (ECF Nos. 22, 23, 24). Therefore, the Court finds that Boston is presumptively the most adequate plaintiff, and this presumption in favor of appointing Boston has not been rebutted. The Court therefore appoints Boston to serve as Lead Plaintiff.

F. Appointment of Lead Counsel

Plaintiff has also moved for the approval of the Firm to serve as Lead Counsel. As "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class," 15 U.S.C. § 78u-4(a)(3)(B)(v), the Court sees no reason to interfere in Boston's selection of counsel here. The Court has reviewed the biographies of the attorneys at the firm and surveyed its work in other securities cases and determined the firm is competent to serve as Lead Counsel. Thus, the Court grants Lead Plaintiff's motion to appoint the Labaton firm as Lead Counsel in this case.

CONCLUSION

In light of the foregoing, the Court appoints Boston as Lead Plaintiff of the class. The Court further approves Lead Plaintiff's selection of Labaton Keller Sucharow as Lead Counsel.

---

[11] Citations to "Certification" refer to the Certification of Plaintiff Pursuant to Federal Securities Law, dated October 11, 2024 and signed by Timothy J. Smyth on behalf of Boston. (ECF No. 12-3).

13

The parties are Ordered to submit a joint status report by **December 4, 2024**, indicating their proposed pleadings schedule.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

    **SO ORDERED.**

Dated: Brooklyn, New York
       November 19, 2024

*Cheryl L. Pollak*

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York