SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

May 5, 2025

**VIA ECF**

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    *Baxter v. PDD Holdings Inc. et al.*, 1:24-cv-05653-PKC-CLP

Dear Judge Chen:

On behalf of Defendant PDD Holdings Inc. ("PDD"), we respectfully write pursuant to the Docket Order, dated December 5, 2024, and Rule 3.A of Your Honor's Individual Rules, to request a pre-motion conference and to set forth the primary bases for PDD's anticipated motion to dismiss the Amended Class Action Complaint (ECF No. 31, "AC") for failure to state a claim.[1]

PDD owns two online marketplaces: Pinduoduo, which serves consumers in China, and Temu, which serves consumers in the U.S. and other markets around the world. Plaintiff asserts securities fraud claims alleging Defendants failed to disclose that (i) Temu's compliance programs did not sufficiently prevent third-party merchants from violating the Uyghur Forced Labor Prevention Act ("UFLPA"); and (ii) Pinduoduo and Temu improperly collected certain user data. For its UFLPA claim, Plaintiff blindly relies on a congressional committee report of "interim findings" from June 2023 (the "Interim Findings"). For its data privacy claim, Plaintiff copies unadjudicated allegations from a June 2024 civil complaint filed by the Arkansas Attorney General, which in turn copied allegations from a 2023 short seller attack and other media reports. Plaintiff does not claim to have done any independent investigation into any of these biased third-party allegations. Notably, PDD has never faced any criminal charges for these alleged issues or been found liable for any alleged regulatory violation. Plaintiff also does not even claim any Defendant had any motive to defraud investors, and the AC alleges no particularized facts showing any Defendant knew or recklessly disregarded any information contrary to PDD's public disclosures. The AC should be dismissed with prejudice for multiple independent reasons.

***Plaintiff Fails To Plead Falsity.*** UFLPA Compliance. Plaintiff's UFLPA claim fails because PDD disclosed the precise risks that Plaintiff claims were omitted. (*See* ¶¶ 69-77.) Indeed, PDD never promised 100% compliance; instead, as Plaintiff ***admits***, PDD disclosed that "***if the***

---

[1]    PDD reserves the right to raise additional arguments in full motion briefing. Defendants Lei Chen, Jing Ma, Jun Liu, and Jiazhen Zhao have not been served, but the following arguments apply with equal force to them.

*third-party merchants that sell merchandise on our platforms . . . violate applicable laws or regulations, those violations could also result in liabilities for us and harm our brands, reputation, and business*," and that although "[w]e strive to comply with all laws and regulations," "we may not have fully complied in the past, and may not be able to fully or timely comply in the future." (¶ 74 (emphasis in original).) The Second Circuit has held that PDD's substantially similar disclosures sufficiently warned of "uncertainty as to the very possibility of maintaining adequate compliance mechanism[s] in light of complex and shifting government regulations." *Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *3 (2d Cir. Aug. 31, 2021). So, too, here. Moreover, after the Interim Findings, PDD updated its disclosures to specifically identify the UFLPA-related risks, further demonstrating the Company's good faith effort to keep the market informed.

PDD also had no duty to disclose specific non-compliance issues alleged in the Interim Findings. "The securities laws . . . do not impose 'a freestanding legal duty' to disclose uncharged wrongdoing . . . .'" *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020) (Chen, J.); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("[C]ompanies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'"). The Interim Findings were not a final adjudication that Temu violated UFLPA. To the contrary, they confirm that Temu has "a zero-tolerance policy for the use of forced, indentured, or penal labor," belying any claim that PDD failed to "implement any internal guidelines" and "take sufficient actions" to ensure UFLPA compliance. (¶¶ 69-77.)

Finally, not only are many challenged statements indisputably true, but some such as "[w]e strive to comply with all laws and regulations" and PDD has "the goal of building an industry-leading compliance program" (*e.g.*, ¶ 69) are forward-looking and inactionable puffery. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021).

Data Privacy. PDD likewise repeatedly warned of risks regarding data privacy and security, including that PDD's "business generates and processes a large amount of data," and "[t]he improper use or disclosure of data could have a material and adverse effect on [its] business and prospects." (¶¶ 83, 92.) PDD also acknowledged that it "may not have fully complied [with all applicable laws and regulations] in the past and may not fully comply in the future," and even warned that "[a]ny negative publicity on [its] platforms' data safety or privacy protection mechanisms and policies, and any claims . . . as a result of *actual or perceived failures*, could have a material and adverse effect" on the Company. (¶¶ 83, 85.)

Again, Plaintiff does not allege that PDD had been charged with *any* criminal or regulatory violation—in any jurisdiction—at the time of the challenged disclosures. PDD was thus under no duty to disclose the allegations Plaintiff claims were omitted. *See City of Pontiac*, 752 F.3d at 184; *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020).

Moreover, "[w]hen a securities fraud action rests on the failure to disclose uncharged illegal conduct, the complaint must state a plausible claim that the underlying conduct occurred." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 578 (S.D.N.Y. 2016). Plaintiff fails to plead particularized facts to support this claim. Plaintiff relies on mostly anonymous sources copied from the Arkansas Complaint, who are not described with sufficient particularity, and on biased sources like a short-seller report, "whose authors had significant motive and

opportunity . . . to misuse or mischaracterize" information.[2] *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020).

***Plaintiff Fails To Plead Scienter.*** Plaintiff does not even attempt to allege motive—*i.e.*, that any Defendant personally benefited from the alleged fraud. Thus, Plaintiff's allegations of conscious misbehavior or recklessness "must be correspondingly greater" to show a cogent and compelling theory of fraud. *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009). The AC's boilerplate, conclusory allegations do not meet this high standard. First, as a threshold matter, the AC fails to allege *any* specific facts concerning any Individual Defendant, instead improperly referring collectively to "Defendants" (*e.g.*, ¶¶ 107-09, 111). This impermissible group pleading independently warrants dismissal. *See In re iQIYI, Inc. Sec. Litig.*, 2024 WL 4362509, at *15 (E.D.N.Y. Sept. 30, 2024). Second, Plaintiff fails to allege particularized facts showing any Defendant received specific information contradicting the alleged misstatements. The Interim Findings do not make any adjudication that Temu (as opposed to the third-party merchants on its site) violated the UFLPA, or any final determination for that matter. In any event, courts routinely hold that the mere existence of government investigations does not support scienter. *See In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 298-99 (E.D.N.Y. 2023), *aff'd sub nom. Bos. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842 (2d Cir. Sept. 3, 2024); (*see* ¶¶ 115-18). As for the Arkansas Complaint, it contains no particularized allegations and instead relies on biased "sources" and anonymous "insiders" (¶¶ 121-22) who are "not described sufficiently . . . [to] support an inference of scienter." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589 (S.D.N.Y. 2011).[3] Third, the far more compelling inference is that PDD accurately and in good faith disclosed the evolving regulatory risks it faced and updated those robust disclosures as new developments occurred.

***Plaintiff Fails To Plead Loss Causation.*** Plaintiff also fails to allege "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Neither alleged corrective disclosure revealed any purported falsity. First, the Arkansas Complaint simply regurgitated unproven allegations made by the short seller and other public outlets months earlier, which explains why PDD's stock price barely moved the day it was filed. (¶ 136.) *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013); *In re Arcimoto Inc. Sec. Litig.*, 2022 WL 17851834, at *6-7 (E.D.N.Y. Dec. 22, 2022) (Chen, J.) (news that "simply parrot[s] facts already in the public sphere" does not support loss causation). Second, PDD's Q2 2024 earnings announcement did not "confirm" any "wrongful acts it committed relating to forced labor and spyware," as Plaintiff baldly claims. (¶¶ 137-38.) Rather, PDD announced lower revenue than expected, anticipated slowdowns in growth and profitability, and that it would not issue dividends for the foreseeable future—all due to increased competition and other external factors having nothing to do with Plaintiff's claim here.[4]

---

[2]  Plaintiff's Item 303 claim also fails, because as detailed above, PDD disclosed all "known trends [and] uncertainties" pertaining to weaknesses in its compliance system and control over data. 17 C.F.R. § 229.303.

[3]  Plaintiff cannot save its pleading by relying on the core operations doctrine or its position-based claims, which courts consistently hold are patently insufficient. *See, e.g.*, *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 228 (E.D.N.Y. 2019).

[4]  Plaintiff does not allege that the interim findings report was a corrective disclosure, even though, according to Plaintiff, it revealed non-compliance with the UFLPA. (¶ 34.) Thus, there cannot have been any revelation of fraud related to the UFLPA *after* June 2023. *See Arcimoto*, 2022 WL 17851834, at *6. Perhaps worse, Plaintiff *did not even purchase PDD securities* until over nine months later, on April 9, 2024. (ECF No. 12-3.)

Respectfully submitted,

*/s/ Robert A. Fumerton*

Robert A. Fumerton

cc:     All counsel of record (via ECF)