# Exhibit D

**THE SELECT COMMITTEE ON THE**
**CHINESE COMMUNIST PARTY**
FREEDOM IS THE VICTOR

# Fast Fashion and the Uyghur Genocide: **Interim Findings**

# EXECUTIVE SUMMARY

Although our investigation remains ongoing, we have learned that Temu is responsible for millions of shipments that are sent to the United States each year through a network of tens of thousands of sellers on its online marketplace.

However, Temu does not have any system to ensure compliance with the Uyghur Forced Labor Prevention Act (UFLPA). This all but guarantees that shipments from Temu containing products made with forced labor are entering the United States on a regular basis, in violation of the UFLPA.

Both Temu and Shein rely heavily on the de minimis exception to ship packages directly to U.S. consumers, allowing them to provide less robust data to CBP, avoid import duties, and minimize the likelihood that the packages will be screened for UFLPA compliance.

While we are continuing our investigation, we make the following interim findings:

1. Temu and Shein alone are likely responsible for more than 30% of all packages shipped to the United States daily under the de minimis provision, and likely nearly half of all de minimis shipments to the U.S. originate from China.

2. Temu's business model, which relies on the de minimis provision, is to avoid bearing responsibility for compliance with the UFLPA and other prohibitions on forced labor while relying on tens of thousands of Chinese suppliers to ship goods direct to U.S. consumers.

3. Temu conducts no audits and reports no compliance system to affirmatively examine and ensure compliance with the UFLPA. The only measure Temu reported that it takes to ensure that it is not shipping goods to Americans that are produced with forced labor in violation of U.S. law was that its suppliers agree to boilerplate terms and conditions that prohibit the use of forced labor.

4. Temu admitted that it "does not expressly prohibit third-party sellers from selling products based on their origin in the Xinjiang Autonomous Region."

## FAST FASHION AND THE UYGHUR GENOCIDE

The Select Committee was formed at the beginning of the 118th Congress to develop a plan of action to defend the American people, our economy, and values from the threat posed by the Chinese Communist Party (CCP) and ensure that the American economy can outcompete that of the PRC.

On March 23, 2023, the Select Committee held a hearing on the CCP's ongoing genocide of the Uyghur people and other minorities. The Committee received first-hand witness testimony and expert reports about the CCP's atrocities, which include imprisonment, torture, rape, forced sterilization, and the widespread exploitation of the Uyghur people in forced labor. Following the hearing, the Committee unanimously adopted a Committee Report in which the Committee found that the CCP continues to commit atrocities against the Uyghur people and other minorities, including by exploiting Uyghur forced labor.[1] The Committee Report also found that products made with Uyghur forced labor continue to contaminate global supply chains and to enter the United States despite prohibitions on such shipments, including the prohibitions and presumptions in the Uyghur Forced Labor Prevention Act (UFLPA) of 2021. Expert witnesses identified specific forced labor concerns in the retail apparel industry and with the supply chains of a number of Western and China-based companies.

Therefore, on May 2, 2023, the Committee requested information from four companies regarding the steps each has taken to ensure that the products that the company provides to American consumers as well as their constituent materials were not produced with forced labor. These questions were directed to Nike, Adidas, Shein, and Temu to learn about their efforts to comply with the UFLPA.[2] In addition, the Committee asked questions related to Temu and Shein's use of Section 321 of the Tariff Act of 1930, known as the de minimis rule, which allows importers to avoid customs duties on incoming packages that are valued at less than $800. In addition, because of the overwhelming volume of small packages and lack of actionable data, "in 2022, CBP cleared over 685 million de minimis shipments with insufficient data to properly determine risk."[3]

Over the last several weeks, all four companies responded with answers to our questions and document productions. While all four companies have voluntarily cooperated with the investigation, they have responded with varying degrees of detail, thoroughness, and transparency. The Select Committee continues to review their submissions and anticipates requesting additional productions.

---

[1] *The Chinese Communist Party's Ongoing Uyghur Genocide: Policy Recommendations*, HOUSE SELECT COMM. ON CHINA (2023).

[2] Letters from Hon. Mike Gallagher, Chairman, and Hon. Raja Krishnamoorthi, Ranking Member, Select Comm. on China, to Nike; Adidas; Shein; Temu (May 2, 2023).

[3] *COAC Next Generation Facilitation Subcommittee: E-Commerce Task Force*, U.S. Customs and Border Protection Office of Trade, Trade Policy and Programs, Intellectual Property Rights Division, Pub #3083-1122, (Dec. 2022).

This interim report is not a complete summary of our work or current findings. Rather, we simply seek to highlight certain key findings involving Chinese fast fashion companies and online marketplaces operating in the United States that we believe must be shared with the American people on an expedited basis.

*          *          *

## INTERIM KEY FINDINGS

Our investigation remains ongoing, but the initial responses and document productions yielded important information that is highly relevant to the Committee's recently adopted Committee Report on the CCP's Uyghur Genocide, as well as the Committee's ongoing work related to Uyghur human rights. For those reasons, we are issuing key, interim findings related to China-based fast fashion companies and online marketplaces operating in the United States. These interim findings should not be read to imply any findings as to matters not discussed in this report.

**Key Finding 1:** Temu and Shein alone are likely responsible for more than 30% of all packages shipped to the United States daily under the de minimis provision, and likely nearly half of all de minimis shipments to the U.S. from China.

Temu is an online retail platform operated by Chinese parent company Pinduoduo, a popular ecommerce site based in China and headquartered in the Cayman Islands. Temu launched in the United States in September 2022 out of Chinese parent company Pinduoduo, which was founded in 2015. Like Shein, its business model is direct-to-consumer, and it does not appear to have any brick-and-mortar retail location in the United States. Instead, Temu facilitates transactions between Americans and China-based sellers. According to documents produced to the Committee, Temu's network includes more than 80,000 suppliers.

Shein is a Chinese fast fashion retailer famous for selling cheap apparel to Gen Z consumers. Founded in 2008, Shein is now one of the world's largest fashion retailers. Rather than relying on traditional brick-and-mortar stores, Shein is an online retailer that ships products direct to American consumers, often from its network of Chinese suppliers. Shein moved its headquarters to Singapore in 2019.

Virtually all of the goods sold to American purchasers on Temu and Shein are delivered through direct-to-consumer shipments from China. Because the vast

majority of these direct-to-consumer packages are valued at less than $800, Shein and Temu are able to ship those packages using the de minimis exception.

The de minimis exception provides admission of products free of duty if the fair retail value of the product does not exceed $800.[4] The de minimis threshold was previously $200 but increased in 2016 with the passage of the Trade Facilitation and Trade Enforcement Act (TFTEA). Since the de minimis threshold was increased, the scale of de minimis imports arriving in the United States has expanded from 220 million packages in 2016 to 720 million in 2021.[5] Excluding Bahrain and Kazakhstan, the U.S.'s de minimis threshold is more than twice that of any other country. The PRC's de minimis threshold is $7, for comparison.[6]

The overwhelming volume of small packages and lack of actionable data limit CBP's ability to identify and interdict high-risk shipments that may contain narcotics, merchandise that poses a risk to public safety, counterfeits, or other contraband. For instance, ninety percent of all counterfeit goods were seized by CBP in the de minimis environment.[7] In FY 2022, CBP cleared over 685 million de minimis shipments with insufficient data to properly determine risk. While CBP receives some advance electronic data for Section 321 shipments from carriers, according to the Commercial Customs Operations Advisory Committee, "the transmitted data often does not adequately identify the entity causing the shipment to cross the border, the final recipient, or the contents of the package."[8]

For these reasons, the de minimis provision is foundational to Shein and Temu's business models and relevant to the Select Committee's analysis of each company's UFLPA compliance regime. The fact that the vast majority of products shipped from both Shein and Temu to American consumers fall under the de minimis exception means that these companies avoid customs duties—making each product cheaper—and are less likely to face the same level of customs scrutiny that other retailers might face on a formal entry.

Based on information provided to us by the two companies in response to our investigation, Temu and Shein are responsible for almost 600,000 packages

---

[4] *Section 321 Programs*, U.S. CUSTOMS AND BORDER PROTECTION (2019) *available at* www.cbp.gov/trade/trade-enforcement/tftea/section-321-programs #:~:text=De%20minimis%20provides%20admission%20of,duty%20shall%20not%20exceed %20%24800.

[5] *Section 321 De Minimus Shipments FY2018-FY2021 Statistics*, U.S. CUSTOMS AND BORDER PROTECTION (2022) *available at w*ww.cbp.gov/sites/default/files/assets/documents/2022-Oct/FY2018-2021_De%20Minimis%20Statistics%20update.pdf.

[6] *Overview of de minimis value regimes worldwide*, Global Express Association (Nov. 4, 2021) *available at* www.global-express.org/assets/files/GEA%20De%20Minimis %20Country%20information_4%20November%202021

[7] *Intellectual Property: CBP Has Taken Steps to Combat Counterfeit Goods in Small Packages but Could Streamline Enforcement*, Government Accountability Office, No. 20-692 (Sep. 2020).

[8] E-Commerce Task Force, U.S. Customs and Border Protection (June 2023) *available at* www.cbp.gov/sites/default/files/assets/documents/2023-Jun/NGFE-C~1.PDF.

shipped to the United States every day under the de minimis rule. At an annualized rate, this totals about 210 million packages sent to the United States every year not subject to any import duties.

In 2022, 685 million shipments entered the United States under de minimis.[9] This means that duty-free shipments from just two companies – Temu and Shein – likely amount to more than 30 percent of all global de minimis shipments into the United States. (Figure 1)



**Figure 1: Share of de minimis shipments from Temu/Shein compared to rest of world.**

In 2021, more than 60% of all de minimis shipments to the United States came from China.[10] (Figure 2) In light of each company's primary supplier network in China, this suggests that shipments from Temu and Shein alone may account for nearly half of all de minimis shipments from China. (Figure 3)



**Figure 2: Comparison of approximate shipments from China and the rest of the world.**

---

[9] Josh Zumbrun, *How a Trade Loophole May Be Letting in Chinese Imports Made With Forced Labor*, WALL ST. JOURNAL (May 26, 2023) *available at* www.wsj.com/articles/how-a-trade-loophole-may-be-letting-in-chinese-imports-made-with-forced-labor-6553a4da.

[10] *Section 321 De Minimus Shipments FY2018-FY2021 Statistics*, U.S. CUSTOMS AND BORDER PROTECTION (2022).



**Figure 3: Comparison of shipments from Shein and Temu compared to the rest of China.**

The millions of packages that Temu and Shein ship every year duty free to the United States, without providing CBP with sufficient data regarding the contents of the packages, stand in stark contrast to the millions of dollars in import duties paid by retail companies. For instance, in 2022, Gap, H&M, and David's Bridal respectively paid $700 million, $205 million, and $19.5 million in import duties. Moreover, these and similar companies' imports were accompanied by better data, allowing CBP to more effectively enforce the law. (Figure 4)

| Brand | Import Duties Paid (2022) |
|---|---|
| GAP | $700,000,000 |
| H&M | $205,000,000 |
| DAVID'S BRIDAL | $19,500,000 |
| SHEIN / TEMU | $0  (*De Minimis* Shipments) |

**Figure 4: Table of U.S. import duties paid in 2022 by retail companies.**

Among other goals, the de minimis rule was intended to reduce the burden on U.S. customs agents from inspecting packages of minimal value. The astounding volume of packages shipped to the United States on a daily basis by

just two Chinese companies provides important insight into both Shein and Temu's business models.

---

**Key Finding 2**: Temu's business model, which relies on the de minimis provision, is to avoid bearing responsibility for compliance with the UFLPA and other prohibitions on forced labor while relying on tens of thousands of Chinese suppliers to ship goods direct to U.S. consumers.

---

We asked Temu what measures it has in place to make sure that goods it sells are compliant with the UFLPA. Temu wrote, in part, "Because Temu is not the importer of record with respect to goods shipped to the United States, [the UFLPA] and the prohibitions set out in [Section 307 of the Tariff Act of 1930] do not apply directly to Temu's activities as an online platform operator."

Temu operates an online platform that facilities the shipping of tens of millions of packages a year to the United States. Temu informed us that there are about 80,000 sellers that list products on Temu. Moreover, "substantially all shipments were shipped to the United States under the de minimis provision." As of last month, Temu reported that no single product on its website was offered or sold at or greater than $800. In other words, all products on Temu fell within the scope of the de minimis rule.

The fact that tens of millions of shipments from China are not being sufficiently vetted for UFLPA compliance is contrary to the goals of this landmark legislation.[11] The UFLPA creates a presumption that goods mined, produced, or manufactured wholly or in part in Xinjiang (or by designated companies in China) simply may not be imported into the U.S. To rebut this presumption, an importer must meet the high burden of clear and convincing evidence.[12] The UFLPA also established a UFLPA Entity List, which identifies - and restricts importing from - companies working with the government of Xinjiang on forced labor matters.[13] As discussed at our recent hearing, this law was Congress's direct response to the

---

[11] *An Act to ensure that goods made with forced labor in the Xinjiang Uyghur Autonomous Region of the People's Republic of China do not enter the United States market, and for other purposes*, Pub. L. 117-78 (2021), *available at* https://www.congress.gov/117/plaws/publ78/PLAW-117publ78.pdf.

[12] *Id*. at § 3(a)(ii).

[13] Cathleen D. Cimino-Isaacs, Christopher A. Casey, & Michael A. Weber, *Section 307 and U.S. Imports of Products of Forced Labor: Overview and Issues for Congress* (No. R46631; p. 1-36), Congressional Research Service (May 21, 2021) *available at* https://crsreports.congress.gov/product/pdf/R/R46631.

CCP's use of Uyghur forced labor, with the intent of ensuring that American consumers are not complicit in these ongoing abuses.[14]

In light of the sheer volume of shipments sent to the United States through its website, Temu's failure to take any meaningful steps with respect to preventing the importation of goods produced with forced labor is striking. Simply put, Temu denies responsibility for ensuring that its 80,000, mostly China-based sellers do not sell products produced with forced labor because Temu is "not the importer of record with respect to goods shipped to the United States."

**Key Finding 3:** Temu conducts no audits and reports no compliance system to affirmatively examine and ensure compliance with the UFLPA. The only measure Temu reported that it takes to ensure that it is not shipping goods to Americans that are produced with forced labor in violation of U.S. law was that its suppliers agree to boilerplate terms and conditions that prohibit the use of forced labor.

Despite facilitating millions of purchases by Americans each year, when asked, Temu did not report any compliance or auditing system to independently verify that the tens of thousands of sellers who list on Temu are not selling products produced with Uyghur forced labor. Temu's current compliance plan relies almost entirely on its China-based third-party sellers that send shipments to the United States with insufficient data to facilitate appropriate customs scrutiny.

The sole measure that Temu reported that it takes to ensure that it is not selling goods produced with forced labor is to require its sellers to agree with its website's "Third Party Code of Conduct," which includes boilerplate language that the company has "a zero-tolerance policy" for the use of forced, indentured, or penal labor. It makes no mention of Xinjiang, the UFLPA, or any other provision of law.

Despite a valuation estimated at $100 billion, Temu also does not have an auditing or compliance program to determine whether its suppliers are compliant with the Code of Conduct or to verify whether its China-based sellers are in fact complying with the UFLPA and other prohibitions under U.S. law.

Lacking any effective compliance measures of its own, Temu relies on a "reporting system" in which "consumers, sellers, [and] regulators," among others, can "file complaints for violations of Temu platform rules." Unsurprisingly, "Temu has not received any complaints concerning forced labor practices." This lack of any complaints highlights the dubious nature of a system that relies solely

---

[14] *The Chinese Communist Party's Ongoing Uyghur Genocide: Policy Recommendations*, House Select Comm. on China (2023); Marti Flacks & Madeline Songy, *The Uyghur Forced Labor Prevention Act Goes into Effect*, CSIS (June 27, 2022) *available at* https://www.csis.org/analysis/uyghur-forced-labor-prevention-act-goes-effect.

on external reporting. Individuals and entities in China that raise questions about forced labor are routinely penalized and are unlikely to self-report violations of U.S. law.[15] It is also unclear how American consumers would have relevant information regarding whether or not a product they purchased on Temu was produced through forced labor or with illicit Xinjiang inputs.

Temu also stated that under its "Prohibited Products List" policy, sellers are alerted when they list a product that violates the List, which includes "products prohibited by applicable laws, nationwide or regional" and "products that support illegal activities." Temu explained that sellers are then given a chance "to cure the violation or remove it" from the website. This system is illustrative once again of Temu's reliance on the China-based sellers to self-report and comply with applicable anti-forced labor laws of the United States.

---

**Key Finding 4:** Temu admitted that it "does not expressly prohibit third-party sellers from selling products based on their origin in the Xinjiang Autonomous Region."

---

In response to our inquiry, Temu acknowledged that it does not have a policy in place to prohibit the sale of goods from Xinjiang—the location of the CCP's ongoing genocide against the Uyghurs—on its platform. This is particularly concerning in light of Temu's lack of UFLPA compliance mechanisms. In fact, after we launched our investigation, we found that Temu's marketplace featured the product in the below screenshot, obtained on May 31, 2023. The product is labeled "New Handmade Knitted Cotton Pendant with Xinjiang Cotton," then available for sale on Temu. (Figure 5). The reference to Xinjiang may refer to the materials, the supplier, the pattern, or the origin of the product. As discussed at the Select Committee's recent hearing, Xinjiang's cotton industry is intrinsically linked to forced labor and import of such cotton into the U.S. is functionally prohibited under U.S. law.

---

[15] *China: Freedom in the World*, FREEDOM HOUSE (2023) *available at* www.freedomhouse.org/country/china/freedom-world/2023.



**Figure 5: Screenshot of item listed on Temu described as a pendant with "Xinjiang Cotton."**

Temu's policy to not prohibit the sale of products that explicitly advertise their Xinjiang origins, even in the face of mounting congressional and public scrutiny on related topics, raises serious questions that warrant—and will receive— additional scrutiny.

\*          \*          \*

As noted above, our efforts to scrutinize the PRC supply chains, UFLPA compliance programs, and relevant business practices of Nike, Adidas, Shein, and Temu are still underway. These initial and interim findings – which reveal Temu's failure to maintain even the façade of a meaningful compliance program, and the true scale of both Shein and Temu's use of the de minimis provision – raise serious concerns about the continued presence of products made with forced labor contaminating American imports. American consumers should know that there is an extremely high risk that Temu's supply chains are contaminated with forced labor. And all companies operating in the United States have an obligation to clean up their supply chain and ensure that they are not contributing to the CCP's genocide of the Uyghur people by facilitating the sale of goods made with forced labor.

\*          \*          \*