UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BLAKE BAXTER, Individually and on behalf :
of all others similarly situated,                           :
                                                            :
      Plaintiff,                :
                                                            :
v.                                                          :      24-cv-5653 (PKC) (CLP)
                                                            :
PDD HOLDINGS INC. F/K/A PINDUODUO  :
INC., LEI CHEN, JING MA, JUN LIU, and      :
JIAZHEN ZHAO,                                         :
                                                            :
      Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT PDD HOLDINGS INC.'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**<u>OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Judith A. Flumenbaum
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000

*Counsel for Defendant PDD Holdings Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ...................................................................................................................................3

I. PLAINTIFF FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION ............................3

      A.      Plaintiff's UFLPA-Related Claims Are Meritless ...................................................3

      B.      Plaintiff's Data Privacy Claims Are Meritless..........................................................5

      C.      Many of the Challenged Statements Are Otherwise Inactionable ............................7

II. PLAINTIFF FAILS TO PLEAD SCIENTER ...........................................................................7

III. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ...........................................................9

CONCLUSION...............................................................................................................................10

## TABLE OF AUTHORITIES

*545 Halsey Lane Properties, LLC v. Town of Southampton*,
   45 F. Supp. 3d 257 (E.D.N.Y. 2014) .................................................................10

*In re Arcimoto Inc., Securities Litigation*,
   No. 21-CV-2143 (PKC), 2022 WL 17851834 (E.D.N.Y. Dec. 22, 2022)..........................9

*In re Arqit Quantum Inc. Securities Litigation*,
   774 F. Supp. 3d 505 (E.D.N.Y. 2025) ....................................................................8

*Asay v. Pinduoduo Inc.*,
   No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ....................................5

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)......................................................................................10

*Bernacchi v. Investment Technology Group, Inc.*,
   No. 15-cv-6369 (S.D.N.Y Apr. 26, 2017) .............................................................7

*Buhrke Family Revocable Trust v. U.S. Bancorp*,
   726 F. Supp. 3d 315 (S.D.N.Y, 2024)...................................................................8

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
   543 F. App'x 72 (2d Cir. 2013) ...........................................................................9

*Christine Asia Co. v. Ma*,
   718 F. App'x 20 (2d Cir. 2017) .......................................................................4, 6

*City of Monroe Employees' Retirement System v. Hartford Financial Services Group, Inc.*,
   No. 10 Civ. 2835(NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ..........................7

*City of Warren Police & Fire Retirement System v. Foot Locker, Inc.*,
   412 F. Supp. 3d 206 (E.D.N.Y. 2019) ...................................................................9

*Crivellaro v. Singularity Future Techology Ltd.*,
   No. 22-cv-07499 (BMC), 2024 WL 5146051 (E.D.N.Y. Dec. 17, 2024) ..........................6

*Dane v. UnitedHealthcare Insurance Co.*,
   974 F.3d 183 (2d Cir. 2020)....................................................................................3

*In re DRDGOLD Ltd. Securities Litigation*,
   472 F. Supp. 2d 562 (S.D.N.Y. 2007).................................................................5, 9

*Francisco v. Abengoa, S.A.*,
   624 F. Supp. 3d 365 (S.D.N.Y. 2022)...................................................................8

*Fries v. Northern Oil & Gas, Inc.*,
    285 F. Supp. 3d 706 (S.D.N.Y. 2018)...................................................................................8

*In re Keyspan Corp. Securities Litigation*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................................5

*Lipow v. Net1 UEPS Technologies, Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)..................................................................................8

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)..................................................................................6

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
    761 F.3d 245 (2d Cir. 2014)................................................................................................4

*In re Mylan N.V. Securities Litigation*,
    No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018)...............................4

*New York City Public Pension Funds v. Coupang, Inc.*,
    No. 16-CV-7926 (JPO), 2025 WL 2613650 (S.D.N.Y. Mar. 28, 2018)..........................4, 7

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)..............................................................................................10

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of*
    *Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)..................................................................................8

*RSM Production Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd* 387 F. App'x 72 (2d Cir. 2010)....................6

*Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings, Inc.*,
    718 F. Supp. 3d 344 (S.D.N.Y. 2024)..................................................................................6

*Schiro v. Cemex, S.A.B. de C.V.*,
    438 F. Supp. 3d 194 (S.D.N.Y. 2020)..................................................................................4

*In re Signet Jewelers Ltd. Securities Litigation*,
    No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ..............................4

*Tian v. Peloton Interactive, Inc.*,
    No. 23-CV-4279 (MKB), 2025 WL 510043 (E.D.N.Y. Feb. 14, 2025)...............................4

*Ulbricht v. Ternium S.A.*,
    No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)................5

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) .............................................................................10

## PRELIMINARY STATEMENT

Unable to point to any particularized allegations supporting its claims, Plaintiff's Opposition resorts to mischaracterizing PDDH's disclosures and the sources that supposedly revealed the "truth."  For example, Plaintiff repeatedly claims Defendants "admitted" wrongdoing on the Q2 2024 Earnings Call by "attribut[ing] poor results to . . . taking on 'greater social responsibility' in response to wrongful acts relating to forced labor and spyware[.]"  (Opp. at 21; *see also id.* at 2, 7, 11, 19.)  But Defendants never said that.  Indeed, they said nothing about forced labor or spyware, much less admitted any "wrongful acts."  The comments about social responsibility were in reference to "enhancing our governance structure" and "do[ing] more to give back to society," such as "support[ing] agriculture and other industry sectors," "offer[ing] greater support to the people who need it most," and "invest[ing] tens of millions in Reading Month."  (Ex. L at 5.)  Plaintiff cannot stave off dismissal by misrepresenting the source documents on which it relies.  As demonstrated in the Opening Brief, the Amended Complaint fails to allege facts establishing any misstatement, scienter, or loss causation.

As to falsity, Plaintiff's entire case is premised on the Company misrepresenting its compliance regarding forced labor and spyware, yet the Opposition cannot point to any nonconclusory allegations of any such violations.  With respect to forced labor, Plaintiff relies entirely on the Interim Report from a congressional select committee, but that report does not actually accuse the Company of violating any applicable laws.  Similarly, Plaintiff's spyware allegations rely on the Arkansas Complaint (which was copied wholesale from the Grizzly Report short seller attack), yet neither of those documents include any particularized allegations showing the Company used spyware, merely that the Pinduoduo app was "capable" of accessing certain user data without authorization.  (*See, e.g.*, Opp. at 2.)  The Opposition even concedes that the Grizzly Report is mere "speculation."  (*Id.* at 22.)  While the Opposition likewise

speculates that the Company "monetized this unauthorized collection of data by selling it to third parties" (*id.* at 5), the Amended Compliant does not allege any specific data that was improperly collected, who sold it, who bought it, when, for how much money, for what purpose, or any other particulars whatsoever about this supposed monetization.  In any event, the Company warned of these exact risks, further undercutting any claim of falsity.  (*See, e.g.*, Ex. A (2023 Form 20-F) at 23 ("[T]here can be no assurance that our controls and policies will prevent all . . . illegal activities by merchants."); *id.* at 26 ("We face a number of challenges relating to data . . . including . . . fraudulent behavior or improper use by our employees[.]").)  The Opposition's only response is that these warnings are hypothetical, but Plaintiff fails to allege particularized facts showing those risks had materialized at the time of the challenged statements.

The Opposition fares no better with scienter, which alone warrants dismissal.  The Amended Complaint alleges nothing about any Individual Defendant's knowledge or state of mind.  The Opposition cites each Individual Defendant's role and the statements they made (Opp. at 18 & n.8), but that is beside the point.  Plaintiff fails to allege any contrary information known or even available to any Individual Defendant at the time a challenged statement was made.  Neither the Interim Report nor the Arkansas Complaint mention an Individual Defendant, and the Grizzly Report, though naming some in passing, offers no facts suggesting scienter.

Lastly, Plaintiff fails to plead loss causation, which is yet another independent basis for dismissal.  Plaintiff admits it purchased all its shares ***after*** the Interim Report, the Grizzly Report, and related media coverage.  Thus, the Opposition is forced to disclaim these as alleged corrective disclosures (Opp. at 22), despite relying heavily on them to try to plead falsity.  Plaintiff insists the Arkansas Complaint revealed "new" information, but the ***only*** purported example the Opposition offers is the allegation that minors use Temu.  (Opp. at 20-21.)  This is

2

hardly a revelation and does not remotely suggest any prior statement by Defendants was false or misleading.  Left with nothing else, Plaintiff falls back on the Q2 2024 Earnings Call, arguing it "revealed for the first time the truth, gravity, and results of the Company's unsustainable business practices." (*Id.* at 21.)  But as shown above, Defendants said nothing about forced labor or spyware on that call, and did not admit any wrongful acts (or any related financial impact).

For all these reasons, the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

## I.    PLAINTIFF FAILS TO PLEAD ANY MISSTATEMENT OR OMISSION

### A.    Plaintiff's UFLPA-Related Claims Are Meritless

Plaintiff argues the disclosures regarding the UFLPA were materially misleading because its policies and procedures "existed only on paper" (Opp. at 9), and PDDH purportedly "admi[tted] that it lacked any internal controls to validate compliance with the UFLPA" (*id.* at 8).  PDDH made no such admission.  Courts "are not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188-89 (2d Cir. 2020).  Plaintiff does *not* contend PDDH did not take the measures listed in its disclosures, which include maintaining a "zero-tolerance policy" toward illegal or fraudulent activities, "requir[ing] merchants on the Temu platform to comply with [PDDH's] third-party code of conduct, which strictly prohibits the use of forced, penal or child labor," "establish[ing] policies and procedures to ensure that no seller on the Temu platform is on the UFLPA Entity List, and us[ing] technology to identify products that are at higher risk of non-compliance." (Ex. A at 23, 45.)  In fact, the Interim Report confirms that these disclosures are accurate and, contrary to Plaintiff's characterization, it does *not* actually accuse PDDH of violating any laws.  (Mot. at 15; Ex. D at 9-10.)  It does not dispute that the UFLPA does not

3

even apply to Temu, and it stops short of claiming the lone example it references—a keychain purportedly made with "Xinjang cotton" sold on Temu—was in fact made with forced labor.

Plaintiff also argues Defendants "confirmed the falsity" of its UFLPA disclosures when PDDH "admitted [on the Q2 2024 Earnings Call] its poor performance and suspension of dividends or buybacks was driven in part by the 'greater social responsibilities' stemming from its forced labor violations." (Opp. at 11.)  To the contrary, Defendants did not reference, let alone admit, any "forced labor violations." (Ex. L at 5, 7.)  Plaintiff cannot rely on "mischaracterizations of [Defendants'] disclosures to plead" a misstatement or omission. *Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 198 (S.D.N.Y. 2020)*; see also Tian v. Peloton Interactive, Inc.*, 2025 WL 510043, at *9 (E.D.N.Y. Feb. 14, 2025) ("plaintiffs 'may not cherry pick [] public statements . . . and divorce them from the universe of disclosed information'").

The Opposition tries to minimize the Company's extensive risk warnings by calling them "generic," "vague," and "hypothetical." (Opp. at 10.)  To the contrary, PDDH expressly warned of the limitations of its compliance measures and articulated real and recognized risks, including that "there can be ***no assurance that our controls and policies will prevent all fictitious, fraudulent or illegal activities by merchants***." (Ex. B at 22-23.)  These disclosures adequately warned of the risk that products violating the UFPLA (which applied to the ultimate sellers, not Temu) might be sold on Temu. (Mot. at 11 (collecting cases); Ex. B at 22.)[1]

Defendants had no duty to disclose anything further, including under Item 303.  *See New York City Public Pension Funds v. Coupang, Inc.*, 2025 WL 2613650, *23 (S.D.N.Y. Sep. 10,

---

[1] Plaintiff's cases are inapposite.  *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (failure to disclose government threat of severe sanctions); *Meyer v. Jinkosolar Holdings Co., Ltd.* 761 F.3d 245, 251 (2d Cir. 2014) (generic warning insufficient given "then-ongoing and serious pollution violations"); *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *10 (S.D.N.Y. Mar. 28, 2018) (disclosing possibility of investigation misleading where investigation concluded and found regulatory violation); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) (duty to disclose additional facts where repeatedly touted "carefully managed" and "high quality" portfolio).

2025) (no Item 303 violation where "the challenged risk was exactly what was disclosed"). Defendants also had no duty "to disclose [any] uncharged wrongdoing," *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020) (Chen, J.), and Plaintiffs do not dispute that PDDH was *never* charged with a UFLPA violation.[2]

### B. Plaintiff's Data Privacy Claims Are Meritless

Plaintiff likewise cannot deny that PDDH repeatedly warned of data privacy and security risks. (Mot. at 15.) Far from "boilerplate" (Opp. at 14), these disclosures specifically warned of data "attacks on our system by outside parties or fraudulent behavior or improper use by our employees," including risks posed by "malicious software." (Ex. A at 26.) These forthright disclosures preclude Plaintiff's claims. *See Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *2-3 (2d Cir. Aug. 31, 2021) (affirming dismissal where "the materialized risks were disclosed").

Nonetheless, Plaintiff argues that PDDH's disclosures were inadequate because the "Temu app was 'purposefully designed to gain unrestricted access to a user's phone operating system' . . . and to monetize that unauthorized data by selling it to third parties." (Opp. at 12.) These allegations are entirely conclusory and fail to meet the PSLRA's heightened pleading standards. (Mot. at 16-17.) *See In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 567 (S.D.N.Y. 2007). Plaintiff does not allege who "purposefully designed" the Temu app "to gain unrestricted access," when they did so, or why; nor allege what third parties supposedly bought the data, what data was sold, for what purpose, who sold it, or when these sales occurred.

Plaintiff's inability to allege any particulars is unsurprising, given its blind reliance on the Arkansas Complaint and Grizzly Report—both equally devoid of specifics. (Mot. at 8.) Relying

---

[2]   Any suggestion PDDH had a duty to disclose its allegedly lacking compliance framework and associated costs *after* the Interim Report was published (Opp. at 9) should be rejected. *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) (no duty to disclose information "accessible in the public domain"). Plaintiff admits the Interim Report was widely circulated and extensively covered in the media. (AC ¶¶ 39-45.)

5

on unadjudicated allegations copied from another pleading is patently insufficient. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (allegations "that are either based on, or rely on, complaints in other actions that . . . [are] not resolved, are, as a matter of law, immaterial."), *aff'd.* 387 F. App'x 72 (2d Cir. 2010).  Moreover, the Arkansas Complaint merely copied the Grizzly Report—including the allegations Plaintiff quotes to allege PDDH's statements were false or misleading.  (*E.g.*, AC ¶¶ 80, 82, 84, 86, 90, 93, 95, 97.)  Courts caution against allegations from self-interested short sellers "whose authors had 'significant motive . . . to misuse or mischaracterize'" information.  *Long Miao v. Fanhua, Inc.*, 442 F.18 Supp. 3d 774, 804 (S.D.N.Y. 2020).  Grizzly Research itself acknowledges its report consists only of opinions (Mot. at 8), and the Opposition concedes it is merely "speculation" (Opp. at 22).[3]

Plaintiff's allegations of "specific misconduct corroborated by independent, contemporaneous evidence" (Opp. at 13) amount to news articles and other sources that likewise rely on unparticularized allegations, speculation, and supposed "experts" or "insiders," none of whom are described with sufficient particularity to meet Plaintiff's heightened pleading obligations.[4]  (Mot. at 18.)  Nor does the Opposition identify anything Plaintiff did to verify any purported "evidence" referenced from its sources.[5]  This too is fatal to its claims.

Lastly, as with the UFLPA claim, Plaintiff contends that during the Q2 2024 Earnings Call Defendants admitted to building spyware into PDDH's apps.  (Opp. at 21.)  Again, that is

---

[3]   In *Crivellaro v. SingularityFuture Tech. Ltd.* (Opp. at 13), short seller reports relied on public information verified by reliable, independent sources, 2024 WL 5146051, at *6 (E.D.N.Y. Dec. 17, 2024), whereas here, the Grizzly Report consists of opinions and uncorroborated sources.

[4]   *Christine Asia* (Opp. at 14) is distinguishable.  718 F. App'x at 23 (crediting plaintiff's theory at pleading stage where parties offered competing explanations for why a government white paper was withdrawn).

[5]   In *Saskatchewan Healthcare Emp.'s Ret. Pension Plan v. KE Holdings, Inc.*, 718 F. Supp. 3d 344, 382 (S.D.N.Y. 2024), the short seller report contained "sufficient indicia of reliability" where the publisher corroborated its analysis by developing a computer program to analyze company's data, cross-checking results with other databases, and conducting in-person site visits.  Plaintiff fails to plead Grizzly took any such efforts.

simply false.  As shown above, the references to "social responsibility" during that call in no way admitted (or even alluded to) spyware or any other wrongdoing.

### C.       Many of the Challenged Statements Are Otherwise Inactionable

Finally, several of the challenged statements are plainly puffery.  (Mot. at 19.)  The Opposition's conclusory response ignores the plain text of the disclosures as well as established caselaw.  (Opp. at 11, 15.)  Plaintiff asserts that PDDH "did not make aspirational comments about the future, but false assurances about the Company's present operations." (*Id.*)  But the very statements Plaintiff cites are quintessentially aspirational, such as PDDH "strive[s] to comply with all applicable laws" and "hold[s] [itself] to the higher standards."  (Opp. at 11, 15.) These statements are not actionable.  *See Coupang, Inc.*, 2025 WL 261360, at *11-12 (statement that company is "continu[ing] to change and make the standards better" is "too aspirational and general to be actionable"); *see also* Mot. at 19 (collecting cases).[6]

## II.       PLAINTIFF FAILS TO PLEAD SCIENTER

The Opposition also confirms Plaintiff's failure to allege particularized facts giving rise to a strong inference of scienter, which independently warrants dismissal.  As a threshold matter, the Opposition continues to rely on impermissible group pleading and fails to address scienter "with respect to each defendant."  *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011).  (*See, e.g.*, Opp. at 16 ("***Defendants*** were aware, or at the very least deliberately reckless, of the Company's lack of UFLPA compliance mechanisms and the spyware embedded in its platform.").)  Plaintiff recounts the Individual Defendants' roles and that they "signed and approved the very statements alleged to be false or misleading."  (Opp. at 18 & n.8.)  But "accusations founded on nothing more than a

---

[6]    *Bernacchi v. Investment Technology Group, Inc.* (Opp. at 11) is inapposite.  No. 15-cv-6369, at *27-28 (S.D.N.Y. Apr. 26, 2017) (touting "independent agency status" and users' anonymity "sufficiently definite").

defendant's corporate position are entitled to no weight," *Francisco v. Abengoa, S.A.*, 624 F. Supp. 3d 365, 402 (S.D.N.Y. 2022).  Plaintiff alleges nothing about any Defendants' particular state of mind, and its bare assertion that "[e]ach was privy to proprietary, material non-public information directly contradicting" the alleged misstatements (Opp. at 18) is entirely conclusory and again fails to distinguish among any Defendant.  *See Buhrke Family Revocable Tr. v. U.S. Bancorp*, 726 F. Supp. 3d 315, 360 (S.D.N.Y, 2024) (alleging scienter by virtue of individual defendants' "positions at USB and the alleged significance of the CFPB investigation . . . is the type of conclusory allegation that the PSLRA was enacted to prevent").

The Opposition fails to "specifically identify" any reports or statements showing UFLPA violations or spyware that was made known to the Individual Defendants.  *See Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 721 (S.D.N.Y. 2018).[7]  For the UFLPA claim, the only sources of information that Plaintiff identifies are "[p]ublic reports, government scrutiny, and congressional investigations" that purportedly "put Defendants on notice that Chinese e-commerce companies were ***at risk of*** UFLPA violations."  (Opp. at 17.)  But the risk of potential UFLPA violations was disclosed.  Further, Temu's participation[8] in the governmental investigation and PDDH's proactive efforts throughout the putative Class Period to engage with regulators undermine any inference of fraud.  *See Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010); *see also Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) ("government investigations cannot bolster allegations of scienter that do not exist").

---

[7]    *In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505 (E.D.N.Y. 2025) (Chen, J.) is inapposite (Opp. at 15) because there, two confidential witnesses alleged specifics about the individual defendant, whereas here, Plaintiff has cited to no first-hand sources and the news reports do not even mention the Individual Defendants.

[8]    Plaintiff offers no support for its assertion that Temu only "partial[ly] cooperat[ed]." (Opp. at 19.)

For the data privacy claims, Plaintiff argues that "Defendants knew or recklessly disregarded that the Temu app was 'purposefully and intentionally loaded' with malware and spyware[.]" (Opp. at 17-18.)  But Plaintiff offers no particularized facts to support these allegations.  (Mot. at 22-23.)  *In re Arcimoto Inc., Sec. Litig.*, 2022 WL 17851834, at *7 (E.D.N.Y. Dec. 22, 2022) (Chen, J.) ("negative innuendos" and "boilerplate" scienter pleading "falls far below what Congress had envisioned when enacting the heightened pleading standard of the [PSLRA]").  Further, the Arkansas Complaint—the primary basis for Plaintiff's data privacy claim—does not even purport to provide any insight into any Defendant's state of mind.  Plaintiff's failure to allege "the who, what, when, where, and how" as is required to plead scienter with particularity is fatal to its claims.  *DRDGOLD*, 472 F. Supp. 2d at 567.

Lastly, Plaintiff invokes the core operations doctrine.  (Opp. at 20.)  But "[t]he 'core operations doctrine' is 'not an independently sufficient means to plead scienter.'"  *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 228 (E.D.N.Y. 2019).

The far more compelling inference is of nonfraudulent intent:  that Defendants made an effort to address changing regulations and data privacy challenges, warned that a failure to comply could have a material impact, and timely updated disclosures as new information became available.  (Mot. at 23-24.)  Nothing in the Opposition undermines that inference.

## III.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

All of Plaintiff's claims also fail for a third independent reason: there is no causal connection between the alleged misrepresentations and Plaintiff's loss.  Plaintiff purchased its shares in PDDH long ***after*** the Interim Report, the Grizzly Report, and related media coverage.  (Mot. at 25; ECF No. 12-3.)  In other words, under Plaintiff's own theory, the purported "truth" was revealed long before Plaintiff invested in PDDH.  *See Cent. States, Se. & Sw. Areas Pension*

9

*Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (information "already publicly available" is "not 'corrective' for the purpose of pleading loss causation").

Recognizing this fatal timing, Plaintiff insists the Interim Report and Grizzly Report were ***not*** corrective disclosures (despite relying on them to argue falsity and scienter). Plaintiff claims that the Arkansas Complaint "revealed new information," but the only purportedly "new" information relates to minor's alleged use of the Temu platform and is irrelevant to this Action. (Opp. at 20-21.) The substantive allegations are regurgitated from the Grizzly Report. *See In re Omnicom Grp., Inc. Sec. Litig.,* 597 F.3d 501, 512 (2d Cir. 2010) ("a negative characterization of already-public information" does not "constitute a corrective disclosure"). The Opposition claims that the Grizzly Report was merely "speculation" and "lacked authoritative confirmation." (Opp. at 22.) Plaintiff cannot have it both ways, arguing that the Grizzly Report should be "deem[ed] reliable" for pleading falsity and scienter, but not for loss causation (*id.* at 13, 17, 22).

Finally, the Opposition also claims the Q2 2024 Earnings Call was a corrective disclosure, but it revealed nothing about any purported fraud or prior misstatements. As shown above, no one on the call even mentioned—much less admitted—any alleged violation of the UFLPA or data privacy laws. (Mot. at 25; Ex. L.) Plaintiff's repeated assertion that Defendants attributed poor financial results to "taking on 'greater social responsibility' ***in response to wrongful acts relating to forced labor and spyware***" (Opp. at 21) is simply false. (Ex. L at 5.)[9]

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.[10]

---

[9]   As Plaintiff fails to plead its Section 10(b) claim, its Section 20(a) claim necessarily fails. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[10]   Plaintiff's request for leave to amend should be denied. It has already amended once and fails to identify "what changes such amendment might effect," rendering further amendment futile. *545 Halsey Lane Properties, LLC v. Town of Southampton*, 45 F. Supp. 3d 257, 267 (E.D.N.Y. 2014); *see also Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 182 (E.D.N.Y. 2019) (no amendment where failed to allege scienter).

Dated: New York, New York
      September 26, 2025

Respectfully submitted,

/s/ *Michael C. Griffin*
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Judith A. Flumenbaum
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Facsimile: (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
judy.flumenbaum@skadden.com

*Counsel for Defendant PDD Holdings Inc.*